Case 1:13-mc-00014-ENV Document 10 Filed 07/31/13 Page 1 of 9 PageID #: 849

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 3 1 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
:
:
IN RE: Global Aviation Holdings Inc., et.al.,  :
:
Debtors. :
------------------------------------------------------------ x

MEMORANDUM & ORDER

1:13-MC-14 (ENV)

**VITALIANO, District Judge.**

Aero Safety Graphics ("ASG") moves, under 28 U.S.C. § 157(d) and Federal Rule of Bankruptcy Procedure 5011, to withdraw its administrative claim and objections made to it from reference to the United States Bankruptcy Court for the Eastern District of New York as part of case No. 1-12-40783-CEC, *In re Global Aviation Holdings, et.al.*, now pending before the Honorable Carla E. Craig, Chief United States Bankruptcy Judge. For the following reasons, ASG's motion to withdraw the reference is denied.

Background

ASG holds several copyrights related to the design of passenger safety information cards, such as the ones provided to passengers on commercial airliners. From 1999 to 2003, ASG contracted with and provided to North American Airlines, Inc. ("NAA"), a co-debtor and subsidiary of debtor Global Aviation Holdings, Inc. ("GAH"), products containing the copyrighted designs. Although ASG did not confront NAA until 2011, ASG asserts that, in 2009 or earlier, NAA began either reproducing the designs and creating derivative works or purchasing safety cards containing copyrighted material from CF Group, a third party vendor. ASG's initial outreach to NAA proved futile, and legal action ensued the following year.

On February 5, 2012, before ASG sought judicial intervention, GAH and its affiliates, including NAA, filed for bankruptcy under Chapter 11 of the Bankruptcy Code. On July 27,

1

2012, ASG filed a proof of loss against the estate of NAA, claiming damages resulting from pre-petition infringement of ASG's copyrights.[1] Several months later, on October 11, 2012, ASG also filed an administrative expense claim for alleged post-petition infringement as well as a request for administrative priority against the estates of GAH, NAA, and its subsidiaries, pursuant to §§ 503 and 507 of the Bankruptcy Code. GAH opposed ASG's claims on December 5, 2012 as part of its omnibus objection to more than 200 late, misclassified, or otherwise disputed claims. Thereafter, on December 10, 2012, the bankruptcy court entered a confirmation order regarding the plan of reorganization filed by GAH and its affiliates.[2]

On January 8, 2013, ASG responded to GAH's omnibus objection by filing the "Declaration of Peter Bonneau in Support of Reply of Aero Safety Graphics, Inc. to Debtors' First Omnibus Claims Objection," in which ASG asserted that NAA continued to infringe on ASG's copyrights post-confirmation. Additionally, ASG filed an "Answer and Counterclaim" seeking monetary damages and injunctive relief. Finally, ASG demanded discovery of the debtors in the bankruptcy court, which is ongoing.

## Legal Standard

District courts have original jurisdiction over all civil proceedings "arising under" or "related to" bankruptcy cases brought pursuant to Title 11 of the United States Code. 28 U.S.C. § 1334. The district court may, however, refer such matters to the bankruptcy judges of the district. 28 U.S.C. § 157(a). In this district, all bankruptcy cases are referred to our bankruptcy court under the Standing Order of Referral, dated August 28, 1986. However, the district court

---

[1] The pre-petition proof of loss is referenced in ASG president Peter Bonneau's Declaration of January 7, 2013. However, ASG did not file any related papers in connection with its withdrawal motion.

[2] The reorganization plan set the effective date as the date when the conditions precedent to confirmation of the reorganization plan were achieved or properly waived. This occurred on February 13, 2013.

Case 1:13-mc-00014-ENV Document 10 Filed 07/31/13 Page 3 of 9 PageID #: 451

retains the authority to withdraw the reference in two circumstances. *See* 28 U.S.C. § 157(d).

First, § 157(d) provides for mandatory withdrawal "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). "The Second Circuit . . . construes this provision 'narrowly,' requiring withdrawal of the reference only if "'substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding.'" *In re Extended Stay, Inc.*, 466 B.R. 188, 196 (S.D.N.Y. 2011) (*quoting In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990)) (emphasis supplied).

In addition, § 157(d) provides for permissive withdrawal "for any cause shown." 28 U.S.C. § 157(d). "In determining whether a party has shown 'cause,' courts consider factors including 'whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.'" *In re Murphy*, 482 F. App'x 624, 628 (2d Cir. 2012) (*quoting In re Orion Pictures, Corp.*, 4 F.3d 1095, 1101 (2d Cir.1993)). Commonly referred to as the *Orion* factors, each is considered by courts in the Second Circuit. *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996). Critically, while multiple factors are evaluated, the first and most important inquiry in the overall evaluation of a request for permissive withdrawal is whether or not the claim falls within the bankruptcy court's core jurisdiction. This is the standard, because the determination of the withdrawal request implicates both the efficiency and uniformity of the bankruptcy court's resolution of the larger bankruptcy proceeding. *Orion*, 4 F.3d at 1101.

At the same time, the Supreme Court emphasized recently in *Stern v. Marshall*, 131 S.

Ct. 2594 (2011), a finding that a matter is core does not ensure that the bankruptcy court has the constitutional authority to adjudicate it. Rather, in its capacity as a legislatively-created court falling outside of Article III of the Constitution, the bankruptcy courts may enter final judgment only "(1) if the claim involves a public right; (2) the process of adjudicating the creditor's proof of claim would resolve a counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy court." *Dynergy Danskammer, L.L.C. v. Peabody Coaltrade Int'l Ltd.*, 2012 WL 5464619 at *4 (S.D.N.Y. 2012) (*citing Stern*, 131 S. Ct. at 2608). While *Stern* indeed limits the universe of cases properly finalized by the bankruptcy courts, the Supreme Court emphasized that its holding was a "narrow" one that did not "meaningfully change[ ] the division of labor" between bankruptcy courts and district courts. *Stern*, 131 S. Ct. at 2620.

## Discussion

1. Mandatory Withdrawal

Even though they agree on little else, the parties concur that ASG's claim hinges on whether GAH or its subsidiaries infringed on ASG's copyrights and, if so, the extent to which GAH or its subsidiaries benefitted from the unlawful use of ASG's design. Obviously the dispute cannot be resolved without analyzing copyright law. But the degree of interpretation required does not approach the "significant and material consideration" that triggers mandatory withdrawal under Second Circuit precedent. *In re Ionosphere Clubs, Inc.*, 922 F.2d at 995; *see also In re Amfesco Industries, Inc.*, 1988 WL 134153 (E.D.N.Y. 1988) (denying motion to withdraw reference of an administrative claim that required a determination of whether a copyright had been violated). The laws at issue are not new, and both the statutory language and the extensive jurisprudence that has developed around it offer a roadmap that a bankruptcy judge and district court judge can follow with equal ease. *See In re Amfesco Industries, Inc.*, 1988 WL

134153 at *2. To find that the straightforward application of such a well-developed body of federal law demands removal of the reference would, in essence, provide the very "escape hatch . . . to the district court" that Congress expressly intended to avoid in crafting the mandatory withdrawal provision. *Id.* (*quoting* House Debate on § 157(d), 130 Cong. Rec. S6081 (daily ed. June 19, 1984). Accordingly, mandatory withdrawal of ASG's claim is not warranted.

2. Permissive Withdrawal

In analyzing permissive withdrawal, courts in this circuit consider first and foremost whether a proceeding is core or non-core. Codified at 28 U.S.C. § 157(b), core proceedings encompass "all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," including but not limited to "matters concerning the administration of the estate" and "allowance or disallowance of claims against the estate." Conversely, non-core proceedings merely "relate[] to a case under title 11." 28 U.S.C. § 157(c)(1). While a bankruptcy court can hear both core and non-core proceedings, it can enter judgment only in those proceedings that qualify as core. 28 U.S.C. § 157(b)(1). For non-core proceedings, it is empowered only to "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district court after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

ASG's claim falls squarely at the heart of the bankruptcy court's core jurisdiction. Indeed, even ASG does not seriously contest that it demands anything other than an "allowance . . . of claims against the estate." 28 U.S.C. § 157(b)(2)(B).[3] Nonetheless, ASG seeks to exploit a

---

[3] Contrary to ASG's assertion, the administrative expense claim implicates the bankruptcy estate, notwithstanding the fact that the debtor's attorneys stated on the record that there were funds available to pay ASG should the administrative claims be allowed. An administrative claim is a

5

proverbial chink in GAH's solid litigation armour, arguing that, in downplaying the core/non-core distinction in *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the Supreme Court created more latitude for district courts to withdraw core claims from the bankruptcy court. Though *Stern* surely emphasized that the bankruptcy court's constitutional authority to adjudicate a particular controversy supersedes the core/non-core distinction codified at § 157, the core/non-core distinction remains relevant in this circuit to claim withdrawal analysis. *See In re Murphy*, 482 F. App'x at 628.

Moreover, ASG cannot retreat to safety in *Stern*'s articulation of the limits of the bankruptcy court's constitutional authority. There has never been any doubt that a bankruptcy judge has the constitutional authority and statutory jurisdiction to enter final judgment in a core proceeding concerning the allowance of claims against a bankruptcy estate. 1-3 Collier on Bankruptcy P 3.02. Analytically, it is clear that ASG's claim constitutes a core claim that falls comfortably within the constitutional authority of the bankruptcy court.[4]

---

claim against the estate, regardless of whether the "estate" has funds to pay the claim or whether the funds are provided by the reorganized debtor. *See* 11 U.S.C. § 726(a)(1) (providing that administrative claims are to be paid from the "property of the estate").

[4] ASG's "counterclaim" for damages arising from alleged post-confirmation infringement does not alter the Court's conclusion. As GAH notes in its opposition papers, the Federal Rules of Bankruptcy Procedure permit counterclaims only in the context of adversary proceedings, not in response to claim objections. *See* Fed. R. Bankr. P. 7001, 9014. GAH did not initiate an adversary proceeding by objecting to ASG's administrative expense claim, and, therefore, ASG's counterclaim falls outside the scope of the procedural rules. Hewing strictly to bankruptcy procedure, ASG's post-confirmation allegations cannot be treated as a counterclaim. The Court need not decide whether to construe the purported counterclaim as an amendment to ASG's original administrative expense claim or to deem the counterclaim moot and permit ASG to initiate an adversary proceeding or otherwise properly advance its claim. Regardless, withdrawal is not necessary. In both cases, the proceeding at issue comprises nothing more than a contested administrative expense claim, and no further analysis is required under 28 U.S.C. § 157 or *Stern*. Moreover, an amended administrative expense claim is not vulnerable to attack on the ground that the right to payment arose following confirmation of the reorganization plan. As pleaded, ASG focuses only on infringement that preceded the effective date, and, accordingly, for which an administrative claim may be brought. *See In re Worldcom, Inc.*, 401 B.R. 637, 642-44

6

The remaining *Orion* factors do little to resuscitate ASG's cause. Contrary to ASG's assertion, withdrawal would not promote judicial efficiency. As the Second Circuit has cautioned, "hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues." *In re Orion Pictures Corp.*, 4 F.3d at 1101. Here, the bankruptcy court not only has administered the estate for nearly one and a half years, it also has initiated related discovery proceedings. Its extensive experience with the case weighs heavily in favor of denying the motion. *Cf. Nisselson v. Salim*, 2013 WL 1245548 at *6 (S.D.N.Y. 2013) (denying motion to withdraw reference of avoidance claim despite bankruptcy court's lack of constitutional authority to enter final judgment where bankruptcy court had lengthy experience administering the estate, knowledge of the subject matter of the particular claim at issue, and greater familiarity with avoidance claims generally); *In re Lyondell Chem. Co.*, 467 B.R. 712, 723-24 (S.D.N.Y. 2012) (denying motion to withdraw reference of non-core matter where bankruptcy court had begun overseeing discovery and addressing several motions); *In re Extended Stay*, 466 B.R. at 206-07 (denying motion to withdraw reference of core proceedings where bankruptcy court had administered estate for over two years and was familiar with the extensive record). This is particularly true in view of ASG's request for administrative priority. By "invok[ing] the [bankruptcy] court's equitable jurisdiction to hierarchically prioritize their claims against other claims," *In re Adelphia Communications Corp.*, 307 B.R. 404, 422 (Bankr. S.D.N.Y. 2004),

---

(Bankr. S.D.N.Y. 2009). Although the effective date has now passed, jurisdiction over an amended expense claim remains proper. "A bankruptcy court retains post-confirmation jurisdiction in a chapter 11 proceeding . . . to the extent provided in the plan of reorganization." *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir. 1993). Here the reorganization plan expressly retains jurisdiction to allow "any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount or allowance of Claims." (Opp., Ex. B, Order Confirming the Debtor's Plan or Reorganization, at Ex. A, Art. XIII.)

ASG triggered an inquiry into "the actual, necessary costs and expenses of preserving the estate," 11 U.S.C. § 503(b). The bankruptcy court's extensive experience administering the estate positions it to most swiftly and efficiently adjudicate these questions.[5]

Furthermore, ASG does not create grounds for withdrawal by asserting in its reply that it has reserved its right to a jury trial. Even assuming *arguendo* that ASG properly preserved that right—a conclusion that is not necessarily warranted based on the record before the Court—withdrawal would not be appropriate at this time. "[P]ermissive withdrawal to take the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready." *In re Extended Stay, Inc.*, 466 B.R. at 198 (internal quotations omitted); *see also In re Murphy*, 482 F. App'x at 628 ("The mere presence of a jury demand in a case does not mandate withdrawal of the reference, as a district court . . . might decide that a case is unlikely to reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit, and therefore might conclude that the case at that time is best left in the bankruptcy court." (internal quotations omitted)). Nothing in ASG's papers suggest that the proceeding is even close to approaching that point. These considerations do not alter the Court's assessment that withdrawal of the reference is not appropriate.

Finally, denial of ASG's motion does nothing more than permit ASG to continue litigating its claim in precisely the forum where it first chose to introduce it as an administrative claim. The policy of avoiding forum shopping weighs in favor of keeping the claim in bankruptcy court.

---

[5] There is no merit to ASG's argument that the possibility that related claims may be brought against CF Group warrants withdrawal of the reference. No such claims have been brought in either the district court or the bankruptcy court and, as such, are not appropriately considered on this motion.

## Conclusion

For the foregoing reasons, ASG's motion to withdraw the reference is denied, and its administrative expense claim shall be returned to the bankruptcy court further proceedings consistent with this Memorandum and Order.

The Clerk of Court is directed to close this docket.

SO ORDERED.

Dated: Brooklyn, New York
July 26, 2013

                                                s/ ENV

                                    ERIC N. VITALIANO
                                    United States District Judge